# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM A. SIMPSON III, | : |
| Plaintiff, | : CIVIL ACTION NO. |
| v. | : |
| CARLISLE CONSTRUCTION MATERIALS, LLC, D/B/A CARLISLE SYNTEC SYSTEMS | : PLAINTIFF REQUESTS TRIAL BY JURY |
| Defendant. | : |

## COMPLAINT

PLAINTIFF, WILLIAM A. SIMPSON III, by and through undersigned counsel hereby files this Civil Action Complaint against Defendant CARLISLE CONSTRUCTION MATERIALS, LLC, D/B/A CARLISLE SYNTEC SYSTEMS and avers the following:

## PARTIES

1. PLAINTIFF, William A. Simpson, (hereinafter also referred to as "PLAINTIFF") is an African American male who resides in the Commonwealth of Pennsylvania with an address for purposes of correspondence at 53 Mall Road, Etters, PA 17319.

2. Defendant, Carlisle Construction Materials, LLC d/b/a/ Carlisle Syntec Systems (hereinafter referred to as "Defendant") is a business entity under the laws of the Commonwealth of Pennsylvania, with its headquarters located at 1285 Ritner Highway, Carlisle, Cumberland, PA 17013.

3. At all relevant times, PLAINTIFF was an employee of Defendant and entitled to protections under Section 1981 Title VII.

1

## NATURE OF THE CASE

1. PLAINTIFF complains pursuant to Section 1981; Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 20003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII"), the Pennsylvania Human Relations Act, as amended, 43 P.S. §§ 951, *et. seq.* ("PHRA"); under the laws of the Commonwealth and seeks damages to redress injuries PLAINTIFF suffered as a result of Defendant's discrimination, harassment, retaliation and the hostile work environment which ultimately led to PLAINTIFF'S unlawful termination from PLAINTIFF'S employment for Defendant.

## JURISDICTION AND VENUE

2. This action involves a Question of Federal Law under 28 U.S.C. § 1331, Section 1981, Title VII of the Civil Rights Act of 1964.  The honorable Court also has supplemental jurisdiction over the Causes of Action.

3. Venue is proper in the Middle District of Pennsylvania as PLAINTIFF was employed by Defendant and worked in Cumberland County, Pennsylvania where the discrimination, harassment and hostile work environment complained of occurred.

4. On or around January 4, 2019, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") (530-2018-05580) against Defendant as set forth herein.  PLAINTIFF'S Charge of Discrimination was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

5. On or about July 14, 2021, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

6. This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

**MATERIAL FACTS**

7. On or around January 25, 2013, Defendant hired PLAINTIFF as a Shift Utility Worker.

8. From the beginning of PLAINTIFF'S employment, Defendant subjected PLAINTIFF and other similarly situated African American employees to pervasive discrimination and harassment in the workplace due to their race.

9. In 2013, only months into PLAINTIFF'S employment, while in the plant during a break the black employees were playing a mock game of basketball. A Caucasian employee, Steve Rum, said to PLAINTIFF'S co-worker, Larry Dalton, "is that all these niggers do".

10. Mr. Dalton later informed Defendant's management of the incident. Despite Defendant's zero tolerance policy of discrimination and harassment in the workplace, the employee was given a slap on the wrist and suspended for two days.

11. On or around January 21, 2015, PLAINTIFF applied and was accepted to the position of TPO Team Member.

12. During PLAINTIFF'S employment, he noticed that Defendant did not employ many black people at its facility, and most of those it does employ it assigned to menial jobs, particularly jobs on the packing floor, the most menial jobs in the facility.

13. Further, Defendant engaged in a pattern of failing and refusing to hire black people and other minorities generally, and especially for supervisory and management positions.

14. At all times relevant, there were no black individuals in supervisory or management positions in Defendant's entire operation.

15. In or around August 2016, PLAINTIFF applied for a supervisor position.

16. PLAINTIFF made it to the second round of interviews but was not hired for the position. PLAINTIFF was informed that he did not get the job because of negative feedback from his supervisor, Sean Free (Caucasian). Mr. Free later told PLAINTIFF, that he had informed the hiring manager that PLAINTFF had been "caught on his cell phone", violated multiple unspecified "policies", and was "immature". Mr. Free's allegations and characteristics of PLAINTIFF were categorically false, as PLAINTIFF had never been disciplined.

17. Thereafter, Mr. Free continued to disparage PLAINTIFF in his attempts to pursue new career opportunities within the company. PLAINTIFF strongly believed that Mr. Free thwarted PLAINTIFF's efforts due to his race.

18. PLAINTIFF began to regularly complain to Defendant's Plant Managers, Ped Young (Caucasian) and Patchett (Caucasian), of Mr. Free's conduct toward him. Despite PLAINTIFF'S complaints, nothing was done.

19. In April 2018, PLAINTIFF applied for a crew leader position, for which the top five qualified employees in the entire facility in seniority would be interviewed. Despite being in the top five, PLAINTIFF was never interviewed. PLAINTIFF'S supervisor, Mr. Free, later told PLAINTIFF that he had been "accidentally overlooked" for an interview.

20. In August 2018, PLAINTIFF applied for another supervisor position, and was only granted a first interview, even though all the other candidates had already had their second interviews.

21. Defendant's Value Stream Manager, Kathleen Nothnagle (Caucasian), told PLAINTIFF that he did not get the job because PLAINTIFF was not "passionate enough." She also stated that PLAINTIFF'S resume could be improved, and that PLAINTIFF should list "extra activities" for the company.

22.     On September 5, 2018, PLAINTIFF applied for a Warranty Specialist position. PLAINTIFF did not get this job, either. Defendant's in-house recruiter, Jared Dietz, told PLAINTIFF that although the hiring manager believed PLAINTIFF could do the job, that manager thought PLAINTIFF would be "a better fit elsewhere." When PLAINTIFF asked recruiters what PLAINTIFF could do better in order to be successful in his application for positions in the company, they ignored PLAINTIFF.

23.     In September 2018, PLAINTIFF also expressed interest in a Field Sales Representative position. PLAINTIFF never received an interview.

24.     In or around mid-September 2018, PLAINTIFF complained again to Mr. Patchett about racially derogatory statements that were being made in the plant. Mr. Patchett, without conducting any investigation, told PLAINTIFF not to believe "rumors."

25.     Further, when PLAINTIFF addressed the same complaints to Mr. Young, Mr. Young stated that PLAINTIFF should address any complaints to Mr. Free, the very man PLAINTIFF had lodged complaints against regarding race discrimination, harassment, and retaliation.

26.     Shortly thereafter, PLAINTIFF complained to Defendant's Regional Human Resources Manager, Lisa Crane (Caucasian) of race discrimination, harassment, retaliation. Specifically, PLAINTIFF complained that Defendant's failed to promote PLAINTIFF due to his race, and that Caucasian employees were using racially derogatory statements and epithets to black employees. Upon information and belief, Ms. Crane never investigated PLAINTIFF'S complaints.

27.     Following PLAINTIFF'S complaint of race discrimination, he was disciplined because he was overheard talking to other employees about explicit sexual insults that an employee had directed to a female employee. PLAINTIFF was disciplined simply because he did not report

the sexual harassment to the Plant Manager or Human Resources, even though he did not have any involvement in the matter. This was the only discipline PLAINTIFF had received throughout his employment with the company.

28. PLAINTIFF has been denied an equal opportunity to compete for positions and has never been hired into a supervisory position or a position that would open doors to him for advancement in the company.

29. As a result of Defendant's actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

30. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

31. That as a result of Defendant's conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

32. As Defendant's conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages against all the Defendant's jointly and severally.

33. PLAINTIFF further claims aggravation, activation and/or exacerbation of any preexisting condition.

34. PLAINTIFF claims that Defendant's unlawfully discriminated against PLAINTIFF because of his race, national origin, and because he complained of an opposed the unlawful conduct of Defendant's related to the above protected class.

35. PLAINTIFF further claims constructive and/or actual discharge to the extent PLAINTIFF is terminated from PLAINTIFF'S position as a result of the unlawful discrimination and retaliation.

36. The above are just some examples, of some of the discrimination and retaliation to which Defendant subjected PLAINTIFF to on a continuous and on-going basis throughout PLAINTIFF'S employment.

37. The Defendant has exhibited a pattern and practice of not only discrimination but also retaliation.

38. PLAINTIFF claims alternatively that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

39. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**UNDER FEDERAL LAW**
**S.C. SECTION 1981**

40. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

41. 42 USC Section 1981 states in relevant part as follows:

> (a) Statement of equal rights All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other. (b) "Make and enforce contracts" defined for purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. 42 U.S.C.A. § 1981.

42. PLAINTIFF was discriminated against by Defendant because of his race as provided under 42 USC Section 1981 and has suffered damages as set forth herein.

43. PLAINTIFF claims unlawful retaliation under 42 U.S.C. 1981 due to Defendant's termination of his employment due to his race and/or national origin.

44. PLAINTIFF also claims unlawful retaliation under 42 U.S.C. 1981 for his opposition to Defendant's unlawful employment practices.

**COUNT II**
**DISCRIMINATION UNDER TITLE VII**
**HOSTILE WORK ENVIRONMENT AND DISPARATE TREATMENT**

45. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

46. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the unlawful employment practices of the above-named Defendant. PLAINTIFF complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's race.

47. SEC. 2000e-2. *[Section 703]* states as follows:

> (a) Employer practices
> It shall be an unlawful employment practice for an employer -

8

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

48. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e et seq., by discriminating against PLAINTIFF because of his race and/or national origin.

49. The discrimination and harassment described above and incorporated into Count IV was severe and pervasive and created a hostile work environment for PLAINTIFF.

50. Defendant subjected PLAINTIFF to discrimination and harassment due to PLAINTIFF'S race and/or national origin.

51. Defendants subjected PLAINTIFF to discrimination and harassment by unlawfully terminating his employment due to his race and/or national origin.

52. PLAINTIFF hereby makes a claim against Defendant under all of the applicable paragraphs of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended.

## COUNT III
## RETALIATION UNDER TITLE VII

53. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

54. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against any of his employees…because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted, or participated in any matter in an investigation, proceeding, or hearing under this subchapter."

55. Defendant engaged in unlawful employment practices prohibited by 42 U.S.C. § 2000e *et seq.* by retaliating against PLAINTIFF with respect to the terms, conditions, and/or privileges, of his employment, and/or for wrongfully terminating his employment due to his race and/or national origin, and because of his opposition to and reporting of the unlawful employment practices of Defendant.

**COUNT IV**
**DISCRIMINATION UNDER STATE LAW**
**HOSTILE WORK ENVIRONEMENT AND DISPARATE TREATMENT**

56. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

57. PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over PLAINTIFF'S Charge.

58. PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (PLAINTIFF may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

59. The PHRA § 955 provides that it shall be an unlawful discriminatory practice: "(a) For any employer because of the race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal because of the blindness, deafness or physical handicap of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of

employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required."

60. Defendant engaged in an unlawful discriminatory practice by discriminating against the PLAINTIFF because of PLAINTIFF'S race and/or national origin.

61. The discrimination and harassment described above and incorporated into this Count was severe and pervasive and created a hostile work environment for PLAINTIFF.

62. Defendant subjected PLAINTIFF to discrimination and harassment due to PLAINTIFF'S race and/or national origin.

63. Defendant engaged in an unlawful discriminatory practice by unlawfully terminating PLAINTIFF because of PLAINTIFF'S race and/or national origin.

64. PLAINTIFF hereby makes a claim against Defendant under all of the applicable paragraphs of the PHRA § 955.

## COUNT V
## RETALIATION UNDER STATE LAW - RETALIATION

65. PLAINTIFF hereby incorporates by reference each and every allegation made in the above paragraphs of this complaint.

66. PLAINTIFF'S PHRA claims are still pending before the PHRC because less than one year has elapsed since PHRC assumed jurisdiction over PLAINTIFF'S Charge.

67. PLAINTIFF will seek leave to amend this complaint to assert his PHRA claims against the parties referenced in ¶ 26 above. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (PLAINTIFF may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

68. PHRA § 955(d) provides that it shall be an unlawful discriminatory practice: "For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act."

69. Defendant engaged in an unlawful discriminatory practice by discharging, retaliating, and otherwise discriminating against the PLAINTIFF because of PLAINTIFF'S opposition to the unlawful employment practices of PLAINTIFF'S employer.

70. PLAINTIFF reported and opposed the discrimination and harassment and the abusive and hostile work environment was ratcheted up.  PLAINTIFF was subjected to discipline which includes but is not limited to his termination of employment.

## JURY DEMAND

PLAINTIFF requests a jury trial on all issues to be tried.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against Defendant, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

By: /s/Erica A. Shikunov
Erica A. Shikunov, Esquire
1835 Market Street, Suite 2950
Philadelphia, Pennsylvania 19103

                                        Phone: 215.391.4790
                                        Email: erica@dereksmithlaw.com

DATED: October 12, 2021